UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMARR FOWLER,

                        Plaintiff,

                                                                     Case # 13-CV-6546-FPG
           v.                                                              DECISION AND ORDER


NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION ("DOCCS"); BRIAN FISCHER,
Commissioner of DOCCS; ALBERT PRACK,
Director of Special Housing of DOCCS;
KAREN CROWLEY, Deputy Superintendent
of Programs of Wende Correctional Facility;
ROBERT KYLE, Corrections Officer of Wende
Correctional Facility; JEFFREY J. PATTERSON,
Corrections Officer of Wende Correctional Facility;
PATRICK J. FARRELL, Corrections Officer of Wende
Correctional Facility; NURSE ADMINISTRATOR SMITH,
Nurse Administrator of Wende Correctional Facility;
DAVID ROCK, Superintendent of Upstate Correctional
Facility; DR. ADAMS, Medical Doctor of Upstate Correctional
Facility; and STEVEN BULLIS, Commissioner's Hearing
Officer of Upstate Correctional Facility;

                        Defendants.

## INTRODUCTION

Plaintiff Jamarr Fowler brings this action pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"), alleging that Defendants violated his constitutional and federal statutory rights while he was incarcerated at Wende Correctional Facility and Upstate Correctional Facility. ECF No. 1. Defendants now move for summary judgment. ECF No. 105. Plaintiff, through counsel, opposes the motion. ECF No. 110. For the following reasons, Defendants' motion for summary judgment ("MSJ") is GRANTED.

1

**LEGAL STANDARD**

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

**DISCUSSION**

Plaintiff raises five separate claims; Defendants seek summary judgment on all of them. The Court addresses each claim in turn.

**I.   Excessive Force and Retaliation Claims Against Correctional Officers Kyle, Patterson, and Farrell**

On March 24, 2011, while at Wende, Plaintiff and Defendant-Correctional Officers Robert Kyle, Jeffrey Patterson, and Patrick Farrell were involved in an altercation. Wende's records indicate that Plaintiff was concealing a razor blade in his sock, and when Kyle, Patterson, and Farrell attempted to restrain Plaintiff and recover it, he drew the blade and resisted them, elbowing Patterson in the head. ECF No. 106-6 at 11. Plaintiff, in contrast, claims that the officers attacked him in retaliation for filing grievances against them. ECF No. 1 ¶¶ 27-28.

This factual dispute is not relevant for purposes of this MSJ because even if Plaintiff's version of events is true, Plaintiff failed to exhaust his administrative remedies as to his excessive

force and retaliation claims. Plaintiff never filed a grievance about the March 24, 2011 incident. He does not dispute this. Rather, he argues that, because he was transferred from Wende to Upstate, "he could not effectively pursue administrative remedies at Wende while being house at Upstate." ECF No. 110 at 6. This is incorrect. DOCCS's grievance procedures specifically permit—indeed, require— inmates to file grievances "at the facility where the inmate is housed even if it pertains to another facility." N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a); *see also LionKingzulu v. Jayne*, 714 F. App'x 80, 82 (2d Cir. 2018) (summary order) (holding that § 701.5(a) is an available administrative remedy). Exhaustion of administrative remedies is mandatory under the Prisoner Litigation Reform Act. *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016)). Accordingly, the Court grants summary judgment to Defendants Kyle, Patterson, and Farrell on this claim.[1]

## II. Due Process Claims Against Deputy Superintendent Crowley, Hearing Officer Bullis, Commissioner Fischer, and Director Prack

After Plaintiff was issued a misbehavior report for the March 24, 2011 incident, Defendant Karen Crowley, Deputy Superintendent of Programs at Wende, held a disciplinary hearing, which began on April 1, 2011 and ended on May 3, 2011. ECF No. 1 ¶¶ 32-33; ECF No. 106-6 at 32. Crowley found Plaintiff guilty and penalized him with 360 days in the Special Housing Unit ("SHU") and loss of privileges. ECF No. 1 ¶ 36.

Plaintiff appealed Crowley's decision to Defendant Brian Fischer, Commissioner of DOCCS, on May 3, 2011. *Id.* ¶ 37. Fischer forwarded the appeal to Defendant Albert Prack, Director of Special Housing of DOCCS. *Id.* On July 8, 2011, Prack reversed Crowley's decision and ordered a rehearing to be held by July 18, 2011 and completed by July 25, 2011 *Id.* ¶¶ 38, 41.

---

[1] Plaintiff also asserts a failure to protect claim against Defendant Fischer based on this incident. ECF No. 1 ¶ 45. Defendants do not address this claim in their MSJ, but because Plaintiff did not file a grievance as to this incident, his claim against Fischer is also unexhausted , and the Court therefore grants summary judgment to Fischer.

When Plaintiff received notice of Prack's decision, he wrote to Fischer explaining that his misbehavior "ticket" needed to be expunged, not just reversed and reheard. *Id.* ¶ 39. He also complained that his appeal had not been heard in a timely manner. *Id.*

Plaintiff was transferred from Wende to Upstate. The rehearing took place at Upstate before Defendant-Hearing Officer Steven Bullis. The rehearing began—after several continuances—on July 27, 2011 and ended—after several more continuances—on September 14, 2011. *Id.* ¶ 41; ECF No. 106-6 at 30. Bullis found Plaintiff guilty of all charges and imposed the same penalty of 360 days in the SHU and loss of privileges. ECF No. 1 ¶ 42.

Plaintiff alleges numerous due process violations with respect to these proceedings.

As to the original disciplinary hearing, Plaintiff claims that the hearing was not started or completed within the established time periods, and that Crowley denied him witnesses, camera footage, documentary evidence, and a fair and impartial hearing. *Id.* ¶¶ 33-35, 47.

As to the appeal, Plaintiff claims that Fischer and Prack failed to timely process the appeal, and that Fischer failed to expunge the misbehavior ticket instead of just reversing it. *Id.* ¶¶ 37-40, 45, 48.

As to the rehearing, Plaintiff claims that Bullis denied him documentary evidence, witnesses, a fair and impartial hearing, and the right to prepare a defense, and he asserts that the rehearing was not timely held. *Id.* at ¶¶ 41-43, 49.

### A. The Original Hearing Before Deputy Superintendent Crowley

Defendants argue that Plaintiff cannot establish a due process violation as to the original hearing because the reversal, rehearing, and imposition of the same penalty cured any defects in the original hearing. *See Barnes v. Henderson*, 628 F. Supp. 2d 407, 411-412 (W.D.N.Y. 2009) (explaining that a reversal on administrative appeal will cure a due process violation in a disciplinary hearing if the reversal occurs before the inmate has begun serving a punitive sentence)

4

(citing *Walker v. Bates*, 23 F.3d 652, 658-59 (2d Cir. 1994), *cert. denied*, 515 U.S. 1157 (1995)). In *Barnes*, an inmate was found guilty after a disciplinary hearing and was sentenced to 18 months in the SHU. *Id.* at 410. On appeal, the inmate's sentence was reduced to six months. *Id.* At the time of the appellate decision, Plaintiff had begun serving his sentence in the SHU, but had not yet served six months. *Id.* Accordingly, the court found "any possible procedural defects were cured through the administrative appeal process before plaintiff began serving any punitive sentence as a result of such defects." *Barnes*, 628 F. Supp. 2d at 412.

Similarly, here, although Plaintiff began serving his time in the SHU before his appeal was granted, on rehearing, he received the exact same sentence as he was originally given, and thus served no time pursuant to the original hearing. He therefore cannot establish a due process violation arising from the original hearing. *See, e.g.*, *Knox v. Dir. of Corr.*, No. 95 C 6988, 1998 U.S. Dist. LEXIS 3810, at *5 (N.D. Ill. Mar. 24, 1998) (finding no due process violation where inmate received same penalty on rehearing as on original hearing, even though he had spent three months in segregation by the time the rehearing took place); *cf. Smallwood v. Scibana*, 227 F. App'x 747, 749 (10th Cir. 2007) (unpublished op.) (in habeas context, holding that an action became moot when the petitioner had challenged procedures at the initial hearing, the misconduct conviction was vacated, and the same sanctions were imposed at the rehearing); *Rodriguez v. Ratledge*, 715 F. App'x 261, 267 (4th Cir. 2017) (unpublished op.) (inmate could not show prejudice resulting from second hearing where it imposed same sentence as original hearing).

Accordingly, the Court grants summary judgment to Defendant Crowley on this claim.

### B. Timeliness of Hearings and Appeals

Plaintiff claims that Defendants Fischer and Prack took too long to process his appeal, and that his hearings were not conducted in accordance with established timeframes. Courts have held that similar claims do not establish a due process violation. *See, e.g.*, *Soto v. Walker*, 44 F.3d 169,

173 (2d Cir. 1995) ("[T]he violation of 7 N.Y.C.R.R. § 251-5.1(a) [regarding the timing of a disciplinary hearing] alone would not be enough generally to establish a constitutional claim."); *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 278 (N.D.N.Y. 2018) ("[A] violation of the rule set forth in 7 N.Y.C.R.R. § 251-5.1, without more, is not enough to establish a federal constitutional claim."); *Barnes v. Henderson*, 628 F. Supp. 2d 407, 411 (W.D.N.Y. 2009) ("Due process for an inmate disciplinary hearing does not encompass a right to a speedy hearing."). Accordingly, the Court grants summary judgment to Defendants Crowley, Bullis, Fischer, and Prack on these claims.

### C. Expungement

Plaintiff claims that the original hearing disposition should have been expunged rather than just reversed. The record evidence indicates that Prack in fact ordered it to be expunged. *See* ECF No. 106-6 at 4 (Memo from Prack to Inmate Records Coordinator at Upstate directing expungement). Plaintiff thus received the relief he claims should have been given. And in any case, "the Second Circuit has not recognized that prisoners have a constitutional right to have incorrect information expunged from their files." *Gee v. Annucci*, No. 9:17-CV-0009 (MAD/ATB), 2017 U.S. Dist. LEXIS 16658, at *10 (N.D.N.Y. Feb. 7, 2017) (finding that the claim that a DOCCS record contains false information is not cognizable under § 1983); *see also Amaker v. Schiraldi*, No. 15-CV-4879 (CBA) (VMS), 2016 U.S. Dist. LEXIS 56610, at *13 (E.D.N.Y. Apr. 26, 2016). Accordingly, the Court grants summary judgment to Defendants Fischer and Prack on this claim.

### D. The Rehearing Before Officer Bullis – Denial of Evidence, Witnesses, a Fair and Impartial Hearing, and the Ability to Present a Defense

In the context of a prison disciplinary hearing, due process requires that an inmate receive "advance written notice of the charges against him; a hearing affording him a reasonable

opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition[.]" *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004).

However, there are "certain limitations to these procedural protections." *Constant v. Prack*, No. 16-cv-3985 (NSR), 2019 U.S. Dist. LEXIS 121629, at *48 (S.D.N.Y. July 19, 2019). For example, there is no right to confrontation—as in a criminal prosecution—and "the right to call witnesses must be balanced 'against the needs of the prison.'" *Id.* (citing *Sira*, 380 F.3d at 69, and quoting *Colon v. Annucci*, 344 F. Supp. 3d 612, 634 (S.D.N.Y. 2018)); *see also Jackson v. Bradt*, No. 13-CV-0004M, 2014 U.S. Dist. LEXIS 76392, at *14 (W.D.N.Y. May 28, 2014) ( "[I]t is well settled that an inmate does not possess a constitutional right to confront or cross-examine witnesses in prison disciplinary hearings."). Further, inmates are not entitled to hearing officers "with the same level of impartiality required by judges," though they are "entitled to a hearing untainted by arbitrary or pre-determined findings of guilt." *Hinton v. Prack*, No. 9:12-CV-1844 (LEK/RFT), 2014 U.S. Dist. LEXIS 126955, at *17 (N.D.N.Y. Aug. 14, 2014). "[A] hearing officer's limited impartiality requirements are satisfied where the record contains 'some evidence' to support the officer's findings." *Id.* (quoting *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)); *see also Washington v. Gonyea*, 538 F. App'x 23, 25 (2d Cir. 2013) (summary order). "This standard is extremely tolerant and is satisfied if 'there is any evidence in the record that supports' the disciplinary ruling." *Sira*, 380 F.3d at 69 (*quoting Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)).

Here, Plaintiff claims that he was denied documentary evidence—use of force reports, unusual incident reports, and audio/video footage of the incident—at the rehearing. The rehearing transcript shows that Plaintiff initially told Bullis that he had not been provided any documents, so

7

the rehearing was adjourned to allow for Plaintiff to receive and review the relevant documents. In fact, the hearing was adjourned numerous times to obtain additional documents and allow Plaintiff to review them. *See, e.g.*, ECF No. 106-6 at 37-38, 42, 80, 83-84, 91, 106-07, 111, 118, 139-40, 156-57, 165 (Rehearing Transcript by ECF page number). Plaintiff was also advised that if, after receiving the relevant documents, he wished to recall any witness who had testified previously, he could do so. *Id.* at 67, 70-71. As to the video/audio footage of the incident, Plaintiff never sought any audio evidence, but did request video. *Id.* at 162. After investigation, it was determined and Plaintiff was advised that the camera in the area was for monitoring purposes only and never recorded video. *Id.* at 170.

In any case, Plaintiff failed to respond to Defendants' argument that summary judgment should be granted on this claim. The Court therefore considers Plaintiff to have abandoned the denial of evidence claim. *See Gaston v. City of N.Y.*, 851 F. Supp. 2d 780, 796 (S.D.N.Y. 2012) (deeming claims abandoned when plaintiff "failed to respond or even mention these claims in his opposition brief to defendants' summary judgment motion").

Plaintiff also claims that he was denied witnesses at his disciplinary hearings. The Court's review of the rehearing transcript reveals that Bullis called the witnesses that Plaintiff identified and tried (if unsuccessfully) to identify other witnesses that Plaintiff wanted to call but could not identify by name. *See* ECF No. 106-6 at 39-40, 106, 130, 140, 143, 149, 152, 153, 169. The rehearing was adjourned numerous times in an attempt to locate witnesses and documentary evidence. *Id.* Thus, the record establishes that Bullis did not deny Plaintiff any witnesses.

Plaintiff also argues that he was denied a fair and impartial hearing. From a review of the transcript, it appears that Plaintiff felt that Bullis interfered with Plaintiff's ability to question the witnesses and prepare a defense. *See, e.g., id.* at 48, 50, 68-71, 77, 89, 104, 149, 154. Indeed,

Bullis frequently interrupted Plaintiff and admonished him against making "arguments" or "cross-examining" the witnesses when Plaintiff attempted to question them. The Court is sympathetic to Plaintiff's frustration, but, as noted, Plaintiff does not have the unlimited right to question witnesses. *See Cole v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 9:14-CV-0539 (BKS/DEP), 2016 U.S. Dist. LEXIS 114872, at *73 (N.D.N.Y. Aug. 25, 2016) (dismissing due process claim against Bullis where plaintiff complained that he called witnesses outside of his presence); *Vigliotti v. Selsky*, No. 08-CV-00875-JJM, 2014 U.S. Dist. LEXIS 51442, at *12-14 (W.D.N.Y. Apr. 14, 2014) (discussing limitations on inmates' right to question witnesses at disciplinary hearings); *Fernandez v. Callens*, No. 06-CV-0506(Sr), 2010 U.S. Dist. LEXIS 115496, at *31-25 (W.D.N.Y. Oct. 29, 2010) (same). As a matter of law, Bullis's interference did not violate Plaintiff's due process rights.[2]

Moreover, the Court finds that there was at least "some evidence" to support Bullis's finding of guilt. *See Hinton*, 2014 U.S. Dist. LEXIS 126955, at *17; *Sira*, 380 F.3d at 69. The correctional officers who were called as witnesses at the hearing testified to the version of events that were set forth in Plaintiff's misbehavior report—that he concealed a razor blade in his sock and then assaulted the officers who frisked him for it.

Accordingly, the Court grants summary judgment to Defendant Bullis on this claim.

### III. Failure to Transfer Claim Against Commissioner Fischer

Plaintiff claims that he sent letters to Fischer requesting a transfer out of Wende and that Fischer failed to act on this request.

Plaintiff failed to exhaust his administrative remedies as to this claim. Although it appears that he filed a grievance about this claim, he failed to appeal it to the Central Office Review

---

[2] Additionally, Plaintiff points to no evidence that Bullis was biased. At most, he suggests that Bullis was more likely to find the correctional officers more credible than Plaintiff. ECF No. 106-6 at 102, 123, 125.

Committee ("CORC"), as required by DOCCS's Inmate Grievance Program ("IGP").  *See* ECF No. 106-1 at 1; ECF No. 106-2 at 2, 5; *see also Brown v. Dubois*, No. 9:15-CV-1515 (LEK/CFH), 2018 U.S. Dist. LEXIS 61661, at *3 (N.D.N.Y. Apr. 10, 2018) ("Included within the IGP's exhaustion requirement is the prerequisite that the inmate must file an appeal with [CORC]and receive a response from the CORC before filing a federal lawsuit.").  Plaintiff does not dispute this fact in his opposition memorandum or his Rule 56 Statement.  ECF No. 110-2.  As Defendants' Rule 56 Statement is supported on this issue by the Declaration of Jeffrey Hale, the Court deems Defendants' assertion admitted.  *See Solomon v. City of Rochester*, No. 6:17-CV-06659 EAW, 2020 U.S. Dist. LEXIS 54417, at *2 (W.D.N.Y. Mar. 27, 2020) (unopposed assertions of fact may be admitted if supported by record evidence); *Concha v. Purchase Coll. State Univ. of N.Y.*, No. 17 Civ. 8501 (JCM), 2019 U.S. Dist. LEXIS 119110, at *14 (S.D.N.Y. July 17, 2019).

In any case, this claim fails on its merits.  Courts have held that merely receiving a letter from an inmate is insufficient to establish personal involvement required to hold a supervisory official liable under § 1983.  *See Pedraza v. Fischer*, No. 9:08-CV-1057 (NAM/ATB), 2010 U.S. Dist. LEXIS 82874, at *8 (N.D.N.Y. July 23, 2010) ("The failure of defendant Fischer to investigate plaintiff's claims personally due to a letter of complaint is insufficient to state a claim."); *Barclay v. Poland*, No. 03-CV-6585CJS(Fe), 2006 U.S. Dist. LEXIS 1582, at *10 (W.D.N.Y. Jan. 19, 2006) (dismissing claim against DOCCS commissioner where plaintiff only alleged that commissioner failed to act on plaintiff's letter requesting a transfer to another prison).

Accordingly, the Court grants summary judgment to Defendant Fischer on this claim.

## IV. Deliberate Indifference Claims Against Nurse Administrator Smith, Superintendent of Upstate Rock, and Medical Doctor of Upstate Adams

Plaintiff claims that Defendant Dr. Adams improperly discontinued his anti-seizure medication, Keppra, and that Defendants Nurse Administrator Smith and Superintendent David Rock did not rectify this situation after Plaintiff wrote to them. ECF No. 1 ¶¶ 74-82.

The claims against Smith and Rock fail for lack of personal involvement. "[A] supervisory official's receipt of a letter complaining about unconstitutional conduct is not enough to establish personal involvement on the part of the official. Even the fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement." *Brown v. Trabout*, No. 17-CV-00271 EAW, 2019 U.S. Dist. LEXIS 2786, at *11 (W.D.N.Y. Jan. 2, 2019) (internal citations and quotation marks omitted); *see also Morales v. Fischer*, 46 F. Supp. 3d 239, 255 (W.D.N.Y. 2014) (finding no personal involvement where the prison superintendent was not involved in any medical decisions regarding plaintiff); *Bumpus v. Canfield*, 495 F. Supp. 2d 316, 322 (W.D.N.Y. 2007) (granting summary judgment to nurse administrator where plaintiff failed to show personal involvement beyond "testimony that he wrote her letters complaining about his perceived lack of medical attention, and that she did not respond").

As to Dr. Adams, Defendants argue that the discontinuation of Keppra was not a sufficiently serious deprivation, and that Dr. Adams did not have a sufficiently culpable state of mind. *See Munger v. Cahill*, 792 F. App'x 110, 112 (2d Cir. 2020) (summary order) (explaining that to establish a deliberate indifference claim, deprivation must be objectively be sufficiently serious; and, subjectively, the defendant must have acted with a sufficiently culpable state of mind, i.e. criminal recklessness).

Here, Defendants submitted a Declaration from Dr. Adams in which he explained that his decision to discontinue Keppra was based on a nurse's report that Plaintiff had refused Keppra for

11

30 days and had not shown any signs of seizures.  ECF No. 106-3 ¶¶ 8-10.  Keppra has possible side effects and Dr. Adams felt that it was not in Plaintiff's best interests to stay on unnecessary medication.  *Id.* ¶¶ 11-12.  Dr. Adams discontinued Keppra based on his medical judgment that it was best for Plaintiff and felt that a physical examination was not necessary to make this decision.  *Id.* ¶¶ 13-14.  He stated that he never acted with malice or recklessness towards Plaintiff.  *Id.* ¶ 16.

Courts have granted summary judgment to defendants in similar circumstances.  *See, e.g.*, *Lacey v. Smith*, No. 15-CV-539 (DNH/CFH), 2017 U.S. Dist. LEXIS 965, at *14 (N.D.N.Y. Jan. 3, 2017) (granting summary judgment to nurse where she concluded that plaintiff's seizure medication was unnecessary because he had not suffered any seizures since being taken off it); *Williams v. Senkowski*, No. 9:00-CV-1580(TJM/BEP), 2003 U.S. Dist. LEXIS 28455, at *27 (N.D.N.Y. Aug. 20, 2003) (finding no culpable conduct on part of medical staff for discontinuing seizure medication where plaintiff refused the medication and was never treated for a seizure while incarcerated).

Plaintiff points to no evidence that would create a triable issue of fact as to the adequacy of Dr. Adams's care.  In response to Defendants' MSJ, Plaintiff's counsel merely states that "I'm not aware that it is the proper practice not to examine a patient when either prescribing medication or ceasing the prescribing of medication."  ECF No. 110 at 5.  Plaintiff's counsel's speculation about proper medical practice is insufficient to create a genuine issue of fact.

Accordingly, the Court grants summary judgment to Defendants Smith, Rock, and Adams on this claim.

**V.     ADA and RA Claims**

Plaintiff claims that he is hearing impaired and that DOCCS placed him a facility not designated for the hearing impaired—Upstate—for three months in 2011. ECF No. 1 ¶¶ 53-62.

Upstate did not offer a TTY (a telephone communication device for the deaf and hard of hearing which uses an electronic transmission of text), an Amplified Telephone Modification, or a Closed-Caption Decoder. ECF No. 110 at 5. Further, Plaintiff claims that upon his arrival at Upstate, his "reasonable accommodations" were confiscated. ECF No. 1 ¶ 54. He claims that DOCCS's actions violated his rights under the ADA and the RA.

Plaintiff's claims fail. The record evidence shows that Plaintiff was not approved for a TTY, an Amplified Telephone Modification, or a Closed Caption Decoder. ECF No. 106-7 at 36 (Plaintiff's Request for Reasonable Accommodations form denying approval for these accommodations). Thus, DOCCS did not violate his rights by placing him in a prison that did not offer accommodations to which he was not entitled.

The only accommodation to which Plaintiff was entitled was a "shake awake alarm." *Id.* Defendants concede that Plaintiff's shake awake alarm was confiscated at Upstate because Upstate generally forbids them as security risks in the SHU (where Plaintiff was housed while at Upstate). ECF No. 106-4 ¶¶ 3-4 (Declaration of Theodore Zerniak, Corrections Captain at Upstate). Nevertheless, Plaintiff has not shown a violation of his rights under the ADA or RA based on the confiscation of the shake awake alarm.

"In order to establish a claim under Title II of the ADA and the RA, Plaintiff must show . . . [that] 'he was denied the opportunity to participate in or benefit from DOCCS services, programs, or activities, or [that] DOCCS otherwise discriminated against him by reason of his disability.'" *Quezada v. Fischer*, No. 9:13-CV-00885 (MAD/TWD), 2017 U.S. Dist. LEXIS 142322, at *101 (N.D.N.Y. Aug. 31, 2017) (quoting *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016)). Courts look to "whether a plaintiff with disabilities 'as a practical matter' was denied 'meaningful access' to services, programs, or activities to which he was 'legally

13

entitled.'" *Quezada*, 2017 U.S. Dist. LEXIS 142322, at *101 (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003)).

Here, Upstate accommodates hearing impaired inmates by requiring staff to knock on their cells when performing rounds announcing programs, showers, meals, sick call, etc. ECF No. 106-4 ¶¶ 5-6. Plaintiff has not identified any programs, services, or activities to which he was denied access as a result of the confiscation of his shake awake alarm: his complaint merely makes conclusory allegations of "pain, suffering, mental anguish and psychological torture," ECF No. 1 ¶ 62, and his response in opposition to Defendants' MSJ does not present any argument or identify evidence on this issue at all.

Accordingly, the Court grants summary judgment to DOCCS on this claim.

## CONCLUSION

For all the foregoing reasons, Defendants' motion for summary judgment (ECF No. 106) is GRANTED. The Clerk of Court is directed to enter judgment in favor of Defendants and close this case. The Pretrial Conference set for June 5, 2020 and the Jury Trial set for June 29, 2020 are cancelled.

IT IS SO ORDERED.

Dated: April 17, 2020
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court